AIKIN v. STATE.

Opinion delivered March 10, 1894.

1. *Constitutional law—Right to compulsory process.*

While a rule of the circuit court which forbids the clerk to issue subpœnas for more than five witnesses in a felony case, unless application is made to the court showing their materiality, is unconstitutional as depriving defendant of the right to have compulsory process for obtaining witnesses in his favor, the enforcement of such rule in a felony case will not be ground for reversal if it does not appear that defendant was prejudiced thereby.

2. *Homicide—Self-defense—Right of assailant to withdraw.*

Where an assailant in a combat, in order to abandon the conflict, and not to gain fresh strength or a new advantage, withdraws as far as he can, but the other will pursue him, if the taking of life becomes inevitable to save life, he may lawfully kill his pursuer; but a mere colorable withdrawal avails nothing.

Error to Crawford Circuit Court.

JEPHTHA H. EVANS, Judge.

STATEMENT BY THE COURT.

Appellant was indicted on the 22nd, arraigned on the 24th, and his trial set for the 28th of November. On the day of arraignment he made the following application to the clerk of the court to-wit:

"APPLICATION TO CLERK.

"In the Crawford Circuit Court, ⎱
    November Term, 1893.         ⎰

H. S. Lewers —Please issue subpœna in behalf of defendant in the case of the State of Arkansas against Geo. Aikin, charged with murder, returnable on Tuesday, the 28th day of November, 1893, for the following witnesses, who are material in this cause: M. M. Renegar, W. L. Purchman, E. J. Crider, Marion James, Moses Dow, Rosie Fens, Sam Shadell, Willis Hurst, Felix Driver, Onie Ross, John Owens, W. T. Flippin, John F. King, Henry Howell, Wm. Jones—these are residents of Crawford county; Henry Aikin, Fred Aikin, Emma Aikin, who are residents of Franklin county. And I certify that each of said witnesses are material and important witnesses for the defendant, in the trial of said cause, and in my opinion the defendant cannot safely go to trial without each and all of them.

[Signed.]                        J. E. LONDON,
                            Attorney for Defendant."

Endorsement by clerk:

"The defendant having had process for five witnesses in this behalf, the same being the number of witnesses prescribed by the rule of court heretofore announced, and entered upon the record of this court, in felony cases, in the absence of a written application to the court for a greater number, I decline to issue subpœna

for the foregoing list of witnesses, unless so ordered by the court. This November 24th, 1893.

[Signed]                     H. S. LEWERS, Clerk

By W. P. SADLER, D. C."

Counsel for appellant filed his application as follows: "Comes the defendant and makes known to the court that on the 24th day of November, 1893, he made application to H. S. Lewers, the clerk of this court, requesting him to issue a subpœna for eighteen witnesses for defendant; said application is herewith filed, and made a part of this motion; that said witnesses are material witnesses for him in the trial of this cause, and he cannot safely go to trial without their attendance; that said witnesses reside within the jurisdiction of this court; that the clerk aforesaid arbitrarily refused to issue a subpœna for any and all of said witnesses. He therefore asks the court to make an order compelling the clerk to issue the same, to the end that he may have a fair and impartial trial."

[Signed]                     J. E. LONDON,

Attorney for Defendant."

The court refused this application in the following order to-wit: Now on this day comes the defendant herein by his attorneys, and files his application for an order of the court directing the clerk of this court to issue process for certain witnesses named in said application to appear in this court and testify on the part of the defendant upon the trial of this cause. And it appearing to the court, upon the hearing of said application, that said defendant has heretofore procured to be issued process for the attendance of five witnesses to testify in his behalf on the trial of this cause, the same being the number for whom the clerk is allowed to issue process in felony cases under rule 1 of the rules amended by the court on the first day of the present term, and entered upon the records of this court of that day; and

it further appearing that said defendant declines to make his application under oath showing the necessity and materiality of such witnesses, as required by rule 2 of said rules; wherefore said application is by the court denied, and to the action of the court in denying said application the defendant at the time excepts.

The bill of exceptions recites that: "At the beginning of the November, 1893, term of the Crawford circuit court, the court made, published and entered of record certain rules of court among these the following:

"1.   The clerk of the court is prohibited from issuing subpœnas for more than three witnesses on a side, and more than five witnesses on a side in felony cases, without the order of the court or judge.

"2.   The order of the court or judge for more than the number of witnesses mentioned in rule 1 may be procured by presenting a written application, made under oath to the court or judge, showing the necessity and materiality of such witnesses."

The first assignment of error in appellant's motion for new trial is as follows : "The court erred in refusing him due process of law in procuring the attendance of his witnesses, and to which refusal defendant at the time excepted."

*J. E. London* for appellant.

1.   The rules of the court deprived appellant of a constitutional right.   Art. 2, sec. 10, const.; 50 Ark. 161.   The legislature cannot deprive the accused of this right, nor can the courts.   41 Am. Dec. 305; 5 So. Rep. 30; 18 Atl. Rep. 763; 12 West. Rep. 588; 23 Tex. App. 212.

2.   The court erred in its instructions to the jury. 51 Ark. 88; 54 *id.* 489; 52 *id.* 589; 52 *id.* 45; *ib.* 273, 345.

3.   It was error to limit the argument of counsel.

*Jas. P. Clarke*, Attorney General, and *Chas. T. Coleman* for appellee.

1. No prejudice is shown by the action of the clerk in refusing the additional subpœnas. It is not shown that appellant expected to prove anything by the absent witnesses, nor did he make this a ground of his motion for a continuance.

2. The instructions are not erroneous.

HUGHES, J., (after stating the facts.) The appellant was indicted for murder in the first degree, and convicted of murder in the second degree, in Crawford circuit court, for the killing of one Dank Davis. Several motions were made for continuance of the cause, which were denied, and which we do not and need not discuss.

1. Right of defendant to compulsory process.

At the beginning of the November term, 1893, of the Crawford circuit court, the judge made, published and had entered of record the following, among other, rules :

"1. The clerk of the court is prohibited from issuing subœnas for more than three witnesses on a side, and more than five witnesses on a side in felony cases, without the order of the court or judge.

"2. The order of the court, or judge for more than the number of witnesses mentioned in rule 1 may be procured by presenting a written application, made under oath, to the court or judge, showing the necessity and materiality of such witnesses."

The appellant applied to the clerk of the court for subpœnas for eighteen witnesses, which were refused by the clerk upon the ground that the appellant had had subpœnas for five witnesses, the number allowed under the rule of the court, without written application for a greater number, and order of the court or judge. The appellant then made a written application to the court, stating the facts, and that the witnesses were material, but not stating how they were material, and

praying an order directing the clerk to issue the sub-
pœnas, which was denied by the court, to which the
appellant excepted, the court finding that the applica-
tion was made for the purpose of testing the validity of
the rule.    The action of the court in this behalf is as-
signed as error in the motion for a new trial.

It does not appear that the appellant was prejudiced
by the absence of these witnesses.   He made no applica-
tion for continuance to obtain their testimony, and a ma-
jority of the court are of the opinion that the case should
not, on this ground, be reversed.    But we are of
the opinion that such rules cannot be approved, and
that there is neither authority or precedent for them
to be found in the history of the jurisprudence of
this State.   Dispatch in business and economy in the
administration of the law are desirable and com-
mendable ; but the constitutional right of a defendant
on trial for felony is made inviolable by the constitution,
sec. 10, art. 2, of which provides that "in all criminal
prosecutions the accused shall enjoy the right to a
speedy and public trial,   *   *   *   and to have compul-
sory process for obtaining witnesses in his favor."

We know of no authority that would warrant the
incumbering of the free enjoyment of this right by the
condition imposed under the above mentioned rules of
the court.

Upon the trial the appellant testified that, at the
time of the killing, the deceased "started toward me,
saying, 'Keep your hand out of your pocket.' I backed,
but he followed, and struck me with a round piece of
iron, and cut a hole in my shirt, and cut my shoulder.
I backed again, and he still followed, when I shot him."

There was other testimony that an iron was found
on the ground near the body of the deceased after the
killing.

2. Right of assailant to withdraw from combat.

The court gave to the jury, among others, the following instructions: If defendant sought, intentionally provoked, or voluntarily and wilfully engaged in a difficulty with deceased at the time of the killing, then defendant cannot invoke the law of self defense, no matter who made the first assault in the difficulty that resulted in the death of Davis, and defendant would be guilty of some grade of criminal homicide; and this would amount to murder if defendant sought, provoked, or voluntarily and willingly engaged in the difficulty with the intention of killing deceased in the difficulty, and would be murder in the first degree if done after deliberation and premeditation, as explained in these instructions"—to the giving of which the defendant excepted.

"It is true, as a legal proposition, that where a defendant brings upon himself a difficulty in which he continues until he brings upon himself a necessity to kill, the law would not hold him guiltless; yet it is not to be doubted that a person accused of crime may show in justification that, although he brought upon himself an imminent danger, he, in the presence of that necessity, changed his mind and conduct, and honestly endeavored to escape from it, but could not without striking the mortal blow. There should always be left room for repentance and the abandonment of an evil and unlawful purpose. *People* v. *Simons*, 60 Cal. 72. 'This space for repentance is always open,' says 1 Bishop, Cr. Law, sec. 871. When, therefore, a combatant, to abandon the conflict, and not to gain fresh strength or a new advantage, withdraws as far as he can, but the other will pursue him, if the taking of life becomes inevitable to save life, he may lawfully kill his pursuer. But a mere colorable withdrawal avails nothing. *Id.* n. 1.; Hale's P. C. 479, 480." *Johnson* v. *State*, *ante*, p. 57.

The idea here expressed should have been embodied in this instruction. The instruction, without it, was not full enough, and was erroneous in this case.

For the error in this instruction, as indicated, the judgment is reversed, and the cause is remanded for a new trial.

WOOD, J. (dissenting). It will be observed that the defendant has brought himself fully within the requirements of the law to have this court pass upon the rules of the Crawford circuit court, in so far as they were enforced by said court in his case. These rules, in our judgment, are in plain derogation of most sacred constitutional rights. While we concur with the majority as to the error in the instruction, we think the other error, in denying the defendant process for his witnesses, by far the more egregious and hurtful. Therefore, while agreeing with the majority in all they say in condemnation of the rules mentioned, we can not ·yield assent to that part which holds that the defendant was not prejudiced, and that the judgment should not be reversed on that account.

Nothing short of a reversal may secure the defendant against a repetition of the same error on a rehearing. We do not know to what extent the circuit judge may be attached to these rules. He may find them so useful in the dispatch of the business of his court, and be so wedded to them, as to refuse to give them up, although this court has pronounced them "unconstitutional and unprecedented in the history of the jurisprudence of the State." He may differ with this court about that; yet, if he should, and invokes them the same way upon a second trial, this court could not consistently, in view of this opinion, reverse for that reason. It is not a question of propriety, but of substantive right. What the defendant is entitled to, in our judgment, is a decision from this tribunal, which is authori-

tative and binding upon the lower court, to the effect
that any rule which denies the defendant the right to a
speedy trial and compulsory process for witnesses is an
infringment of his constitutional rights, for which this
court will promptly reverse.   The learned circuit judge
doubtless considers, however, that imposing conditions
upon the defendant, a compliance with which will secure
to him process, is not denying it to him, because he has
the option to comply and obtain it.   Suppose the judge
had said : "I will make a rule that, before the defendant
can have process for *any witnesses*, he shall be required
to show to the court or judge, by affidavit, that they are
material."   That would strike the most "nascent intelli-
gence" of the profession as unwarranted.   Yet, if it is a
privilege to be hampered with a condition, why not say
*none, or one, or any other number* as well as five?   Why
fix arbitrarily upon the number *five* as the constitutional
limit to be called for without complying with a condition
precedent ?

Art. 2, sec. 10, of the constitution of Arkansas
provides : "In all criminal prosecutions the accused
shall enjoy the right to a speedy public trial by an im-
partial jury ;   *   *   *   *   *   *   *   to be confronted
with the witnesses against him ; to have compulsory
process for obtaining witnesses in his favor, and to be
heard by himself and his counsel."   This is almost an
exact copy of amendment 6, constitution of the United
States.   Similar provision is found in most, if not all,
the States of the Union.

Our statute providing the method for invoking this
process is as follows :   "The clerk of the court upon the
request of the prosecuting attorney, *or of the defendant,
or his attorney*, shall issue subpœnas for witnesses,"
Mansf. Dig. sec. 2143.   Also : "The provisions of law in
civil actions shall apply to and govern the summoning
and coercing the attendance of witnesses, and com-

pelling them to testify in all prosecutions, criminal or penal actions or proceedings, except that the attendance of witnesses residing in any part of the State may be coerced, and it shall never be necessary to tender to the witnesses any compensation for expenses or otherwise before process of contempt shall issue." Mansf. Dig. sec. 2144.

The provisions of the constitution of the United States, and of the constitutions and statutes of the States, granting process do not imply that the government must defray the expenses of the witnesses. That matter is regulated by statute. Under a statute of the United States (9 Stat. c. 98), where the defendant is too poor to pay for the attendance of his witnesses, and desires to have the government bear that expense, as a condition of availing himself of the gratuity of the government, some such condition as to showing materiality, etc., of the testimony is required, similar to the above rules. But in no case is the defendant to be denied the right to process. Judge Miller, in speaking of the provision of the Constitution of the United States, says: "He (the defendant) is also to have compulsory process for obtaining witnesses in his favor; that is to say, that, however poor he may be, or however unable to pay expenses of such witnesses as *he may deem necessary*, the court shall issue its process to compel their attendance for examination upon the trial. Miller on Const. U. S. p. 510. But our statute is far more liberal than the statute of United States and that of some other States. It says: "The attendance of witnesses may be coerced, and it shall never be necessary to tender fees," etc. It will be seen that there are no limitations to the enjoyment of the right to process, in the constitution or the statutes upon the subject. In *State* v. *Roark*, 23 Kas. 153, Chief Justice Horton said: "No court has the right to limit or deny this constitutional guaranty

against the protest of the accused." Judge Story, in speaking of this provision in reference to counsel and compulsory process, said: "The wisdom of both of these provisions is therefore manifest, since they make matter of constitutional right what the common law had left in a most imperfect and questionable state. They are scarcely less important than the right of a trial by jury." 2 Story on Const. p. 572. Mr. Rice, in his work on Evidence, (vol. 3, p. 267), says: "He has the same right to this process that he has to appear and defend in person and with counsel." And as was said by a learned judge of California in speaking of these rights: "They are of the great muniments of personal liberty. Some of them are included in the provisions of section 29 of the act of Parliament known as 'Magna Charta.' They are of too much value to be impaired by legislation or frittered away by interpretation. They should stand and be accorded in their entirety, unabridged and undiminished." Then, our constitution itself containing no restrictions or conditions to the enjoyment of the right to a "speedy trial" and "compulsory process," the legislature could make none, much less the courts. The legislature has never attempted it, and the courts *should not*.

Circuit courts have the power "to make and establish all proper rules which may be necessary for the dispatch of business." Mansf. Dig. sec. 1377. But this, of course, was only intended to empower them to make rules which would enable them to conduct the business of their courts in an orderly and expeditious way within the law. While heartily commending all rules looking to that end, we feel that it is the duty of this court to see that such rules are circumscribed by the constitution and statutes. The only way, in our opinion, to do that is to reverse for just such errors as has been committed in this case.

The majority hold that the defendant was denied his constitutional right to process, and criticise and condemn the action of the court in strong language.: But they say defendant was not prejudiced by it, because it does not appear that he afterwards made a motion for continuance on account of the absence of these witnesses for which he had asked process, showing the materiality of their testimony, etc. The defendant was not asking for a continuance. But, immediately upon arraignment and the setting of his case for trial, he asked for the process of the court to obtain his witnesses. The presumption is, he did this in order that he might get ready for a "speedy trial," which was his right. How could he properly prepare for his trial without an opportunity to have his witnesses brought to court, in order that he and his counsel might consult with them? If accused persons, in order to avail themselves of the right to reversal where process is denied, must follow up their application for process with a motion for a continuance setting up the very things which the rules require to be done, then the effect of the decision in our opinion is to allow the circuit court to do *indirectly* what this court has said could not be done *directly*, namely, to force the defendant to make a showing by affidavit of the materiality of the testimony of his witnesses before granting him process for them. This is all wrong. The defendant has the right to his process when *he or his attorney asks the clerk for it.* Neither the circuit judge nor the circuit court has any right to inquire about materiality until the defendant asks for a continuance. Then the court has the right under the statute to know whether the witnesses are material, but not before. Acts of 1887, p. 19. The court has no right to compel the defendant, in advance of the call for trial, to reveal what he expects to prove by his witnesses; nor has the court that right at any time, so long as the defendant is asking a speedy trial.

The ruling of the court was equivalent to forcing him to a motion for continuance, when the presumption is, from asking process, that he wanted a speedy trial.

Sec. 13, art 2, of the constitution also provides: "Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase, completely and without denial, promptly and without delay, conformably to the laws." The rules of the Crawford court were also manifestly repugnant to this provision.

With all proper deference to the opinion of our brother judges, being unable to see how a defendant can be denied constitutional rights without at the same time being prejudiced thereby, for the reasons stated, we dissent from so much of the opinion as holds that the defendant was not prejudiced by this error, and think the cause should be reversed for this also.

Bunn, C. J., concurred in the dissenting opinion.